THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
GIL L. CRAIG et al.,              )
                                                Case No. 1:12cv00125 DS
                Plaintiffs,       )

        vs.                       )             MEMORANDUM DECISION
                                                     AND ORDER
                                  )
THE TACO MAKER, INC.,
Et al.,                           )

                Defendants.       )
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

## I. INTRODUCTION

Plaintiffs commenced this lawsuit seeking to collect unpaid money allegedly owed them after the sale of all the shares of The Taco Maker, Inc. to Defendants. Defendants counterclaimed based on various alleged misrepresentations, omissions, and breach of warranties by Plaintiffs relating to the stock sale.

Plaintiffs seek summary judgment dismissing Defendants' two counterclaims (Doc. #26, & #38) "on the grounds that Defendants were late in filing those claims because (1) the parties contractually agreed in writing upon a specific limitation of three (3) years to make claims for purposes of effectiveness of representations, warranties, covenants and agreements and indemnification therefor; (2) the relevant statutes of limitation have run; and, (3) laches." Mem. Supp. pp 1-2.

## II. SUMMARY JUDGEMENT STANDARD

Under Fed. R. Civ. P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[1] *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. 242.

## III. DISCUSSION

### A. Three Year Contractual Limitations Period

To facilitate sale of the shares of The Taco Maker, Inc., a Stock Purchase Agreement ("SPA") "Dated as of October 4, 2006", was entered into by Plaintiffs and the

---

[1] Whether a fact is material is determined by looking to relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242.

2

predecessor of Defendant The Taco Maker, Inc.[2]  The SPA was signed by Tomas Torres as President of the predecessor corporation and was guaranteed by each of the four individually named Defendants.[3]   Additionally, TTM Acquisition, Inc. and three of the individual Defendants, Torres, Budet and Lausell, each signed personally as Makers on a Secured Promissory Note.[4]

Paragraph 11 of the SPA provides for a three (3) year contractual limitation period following the Closing regarding "[a]ll representations and warranties and all covenants and

---

[2] An entity called TTM  Acquisitions, Inc., was created to acquire all the shares of The Taco Make, Inc., then owned by Plaintiffs

[3] The terms of the Guaranty provide that "the undersigned, as majority shareholders of Buyer [TTM Acquisitions, Inc.], absolutely, unconditionally and irrevocably guarantee ... all obligations of every kind and character now or hereafter existing of the Buyer under this Agreement [SPA]". SPA p. 39, Mem. Supp. at  Ex. A.

[4] That Note provides that it "has been executed and delivered pursuant to and in accordance with the terms and conditions of that certain Stock Purchase Agreement dated as of October 4, 2006, ... and is subject to the terms and conditions of the Agreement [SPA], which are, by this reference, incorporated herein and made a part hereof." Mem. Supp.,  Ex. B, p.1..

agreements set forth in this Agreement".[5] SPA ¶ 11, Mem. Supp. at Ex. A. The Closing date occurred on October 16, 2006. Defendants' legal claims against Plaintiffs set forth in their Counterclaims were filed on January 7, 2013, and May 9, 2013, more than six years after the Closing Date.

Plaintiffs assert as the basis for their Motion that Defendants contractually agreed that they would lose all rights to rely upon any representations, warranties, covenants and

---

[5] See paragraph 11(a) of the SPA which more fully provides as follows:

.... All representations and warranties and all covenants and agreements set forth in this Agreement shall continue in full force and effect and shall survive the Closing for the same period as the as the as the [stet] applicable statute of limitations plus ninety (90) days with respect to any claim based on a claim or action by a third party, and for a period of three years following the Closing Date with respect to any claim not based on a claim or action by a third party, at which time the effectiveness of such representations, warranties, covenants and agreements and the indemnity obligations of the [stet] each party shall terminate (the "Indemnity Termination Date"), except as to claims of which notice is given to the indemnifying party prior to such date in accordance with the terms of this Section 11.
...

As it relates to the Plaintiffs' indemnification obligations, paragraph 11(b) of the SPA provides as follows:

From the date hereof until the Indemnity Termination Date, the Selling Stockholders shall jointly and severally indemnify and hold harmless Buyer and the Company from and against any and all Losses incurred or suffered as a result of (i) any breach of any representation or warranty of the Selling Stockholders contained herein or in any certificate, instrument, schedule or exhibit delivered pursuant hereto or in connection herewith, (ii) any breach of any agreement, covenant or obligation of the Selling Stockholders contained in this Agreement and (iii) any liabilities or obligations of the Company of any kind whatsoever ....

...

agreements, including the right of setoff after a 3 year period following the closing date.[6] As evidentiary support for their position, Plaintiffs have submitted a copy of the SPA which specifically provides for a contractual limitations period for three years following the closing date, which occurred on October 16, 2006.

Defendants admit having entered into the SPA and have offered no evidence that Section 11 of the SPA was ever amended, modified, or is not binding upon them. As Plaintiffs' note, under Utah law[7] contractual limitations on the time to bring suit "if reasonable, are valid, binding and enforceable." *Hoeppner v. Utah Farm Bureau Ins. Co.*, 595 P.2d 863, 865 (Utah 1979)(citation and internal quotation marks omitted).[8] "Defendants admit that contractual limitations shortening the time for bringing suit are valid, if reasonable", Mem. Opp'n at 7, but offer no viable factual or legal position that the 3 year contractual limitation period is not reasonable.

The Court rejects in turn each of the following positions offered by Defendants in

---

[6] Defendant Taco Maker characterizes its counterclaims as "claims primarily designed as set-off from amounts owed to Plaintiffs and arising from various misrepresentations and breaches of representations and warranties in connection with a sale of securitiies to the predecessor know as TTM Acquisitions, Inc." Mem. Opp'n at 18-19. The Individual Defendants characterize their counterclaim as a request for declaratory judgment "for the purpose of ruling upon the validity of the personal guaranties due to the misrepresentations and breaches of representations and warranties ... but also due to certain post-closing modifications which have increased the risk present in the instruments." *Id*. at 19.

[7] The parties agreed that the law of Utah would govern disputes under the SPA. Mem. Supp., Ex. A ¶28.

[8] *See also Moore v. Berg Enterprises, Inc.*, 3 F. Supp 2d 1245, 1248 (Utah 1998), *aff'd*, 201 F.3d 448 (10th Cir. 1999) (acknowledging that under Utah law, if reasonable, contractual limitations on the time to bring suit are valid and enforceable); *Heimeshoff v. Harford Life & Acc. Inc. Co.*, 134 S. Ct. 604. 611 (2013) ("rule necessarily allows the parties to agree not only to the length of a limitations period but also to its commencement").

opposition to Plaintiffs' Motion.

### 1. Admissible/Authenticated Evidence

Defendants' first argument, that there is no admissible/authenticated evidence before the court supporting Plaintiffs' Rule 56 Motion is without merit. Defendants ignore Plaintiffs' clear citation to the record,[9] *see* Mem. Supp. at 7, and they ignore that the SPA attached as Exhibit A to Plaintiff's Mem. Supp. (Doc. #57), is the same as Exhibit A attached to the Amended Complaint and Notice of Acceleration (Doc. #3), which Defendants previously admitted is an accurate copy of the SPA.[10]

The Court concludes, therefore, that Exhibit A attached to Plaintiff's Motion is of record, authenticated by admission and that the requirements of Fed. R. Civ. P. 56(c)(1) have been satisfied.

---

[9] Fed. R. Civ. P. 56(c)(1)(A) provides that the party asserting a fact must support that assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stores information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials".

[10] *See* The Taco Maker, Inc's Answer and Counterclaim (Doc. #26) at ¶ 10 ("Taco Maker admits that the agreement attached as Exhibit 'A' to the Amended Complaint appears to be an accurate copy of select portions of the stock purchase agreement entered into by and between Plaintiffs and TTM - Utah (the agreement will be referred to herein as 'SPA')). *See also* the Individual Defendants' Answer and Counterclaim (Doc. #38) at ¶ 9 ("The Individual Defendants admit that they held the outstanding shares of TTM Acquisitions, Inc., ('TTM-Utah') and further that TTM-Utah was a special purpose vehicle for the acquisition of the outstanding shares of Taco Maker, Inc., a Utah Corporation. Exhibit 'A' to the Amended Complaint also appears to be a true copy of that agreement.").

### 2. Rule 56(f) (now codified as Rule 56(d))

Defendants' next assertion, that under Fed. R. Civ. P. 56(f), now codified as Rule 56(d), the Motion should be denied without prejudice to allow for discovery of facts unavailable to them, is also rejected. The Tenth Circuit instructs that

> a party seeking to defer a ruling on summary judgment under Rule 56(f) must provide an affidavit explain[ing] why facts precluding summary judgment cannot be presented. ... This includes identifying (1)the probable facts not available, (2)why those facts cannot be presented currently, (3)what steps have been taken to obtain these facts, and (4)how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment.

*Valley Forge Ins. Co. v. Health Care Management Partners, Ltd.*, 616 F. 3d 1086, 1096 (10th Cir. 2010)(citations and internal quotation marks omitted).

The Court agrees with Plaintiffs that the Sosa Affidavit (Doc. # 61-1) falls short of what is required to be entitled to the relief requested. Defendants "have not identified the probable facts they now claim are not available, They have not identified why those facts cannot be presented currently. They have not identified what steps they have taken to obtain these facts. Finally, they have not specified how additional time will enable them to obtain those facts and rebut the Motion for summary Judgment." Am. Reply at 7.

### 3. Set-Off

Defendants' next assertion, that a set-off may be raised as a defense to payment without regard to a statute of limitations, is likewise rejected.[11] Defendants have not cited

---

[11] Defendant Taco Maker's "counterclaim is based upon the difference in value of what was paid and/or owed to Plaintiffs per the terms of the stock purchase agreement and that of what amount would have been paid had full and fair disclosure been made." Mem. Opp'n at 13. "[T]he Individual Defendants Answer and Affirmative Defenses, set-off has been raised as an affirmative defense for the amounts owed to Plaintiffs pursuant to the terms of the guaranties and a one count counterclaim has been filed for declaratory judgment." *Id.*

any case law regarding the right to raise counterclaims for set-off when contractually precluded from so doing.  *See* SPA ¶11.

While Utah law does create a limited exception for counterclaims normally barred by statute of limitations, as compared to contractual limitations, the claims may be offset only if they coexisted.  Even applying case law applicable to statutory limitation periods to the facts of this case, the bar is not applicable.  Application of this legal principle is clarified in *United Pac. Ins. Co. v. Knudsen Constr., Inc.,* No. 2:97cv235C, 2001 WL 693997, at * 5-6 (D. Utah May 6, 2001).

> Utah law does .... allow otherwise time-barred claims to be raised as a "setoff" against liability claims. *Jacobsen v. Bunker*, 699 P.2d 1208, 1210 (Utah 1985).  "A defendant may therefore utilize a counterclaim, normally barred by the statue of limitations, to offset a plaintiff's claim, but only to the extent the claims equal each other*." Coulon v. Coulon*, 915 P.2d 1069, 1072 (Utah 1996).  However, the claims may be offset only if they coexisted.  See id. (emphasis added), citing *Salt Lake City v. Telluride Power Co.*, 17 P. 2d 281, 286 (Utah 1932).  On this point, Knudsen's "offset" argument fails because the claims at no time coexisted.
>
> [T]he cross-demands must coexist; that is they must subsist in such a way that if one party had brought suit on his demand the other could have set up the demand he held against that of the plaintiff.  There must be *an overlapping of live demands in point of time.  If the demand of one party becomes barred and is not subsisting as a cause of action when the demand of the other party comes into existence, the former demand is not available*.
>
> *Telluride*, 17 P. 2d at 285, quoting *O'Neil v. Eppler*, 162 P. 311, 312 (emphasis added). "[T]wo claims are coexistent and overlapping in point of time ... [if] both are subsisting claims before the statue of limitations has run against either. *Id.* at 286.  Here ... the statute of limitations ran on Knudsen's counterclaim at the latest in 1994 - six years after Knudsen knew of any alleged problem with the escrow. The present action was filed in 1997,

8

and therefore Knudsen's claimed "setoff" action against UP is at least three years too late.

*United Pac. Ins. Co. v. Knudsen Constr., Inc.* at *5-6.

The Court agrees with Plaintiffs that "[f]or purposes of fixing the time when the Plaintiffs' cause of action came into existence, the cause of action arose on April 1, 2012, the day after the Defendants failed to make the noted quarterly interest payment." Am. Reply at 11.[12] The Court further agrees with Plaintiffs that "any cross-demand for setoff governed by a statutory [or contractual] limitation of actions that expired before April 1, 2012 was no longer subsisting as a cause of action when the demand of Plaintiffs came into existence, and was therefore no longer available." *Id.* Here, Defendants contractually agreed that they would lose all rights to rely upon any representations and warranties, covenants and agreements, including the right of setoff after October 16, 2009.

### 4. Tolling

Defendants claims[13] fit squarely within the parameters of the contractual bar agreed upon by the parties. *See* SPA, ¶ 11. Defendants have not cited any authority for tolling the contractual bar in Section 11 of the SPA. Because there is no viable legal or factual dispute as to the application of the contractual limitation period, Defendants' argument

---

[12] It is uncontroverted that Defendants failed to make interest payments due on March 31, 2012, and on June 30, 2012. See Am. Compl. at ¶20, Individual Defendants' Answer at ¶20, and Taco Maker's Answer at ¶20.

[13] *See* Mem Opp'n at 15 ("In the present matter, Defendants have raised legal and equitable claims and affirmative defenses based upon allegations of Plaintiffs' own misrepresentations and breaches of representations and warranties in connection with a stock purchase agreement.").

regarding the need for a fact based inquiry regarding the possible tolling of the statute of limitations is irrelevant

### 5. Laches

Because the Court does not reach Plaintiffs' argument relating to laches, Defendants' opposition to that argument is moot.

### 6. Relation Back of Counterclaim

Defendants have not cited any authority that the institution of a plaintiff's suit tolls or suspends a contractual limitations period for purposes of their counterclaims.

Even applying case law applicable to statutory limitation periods[14] to the facts of this case, Defendants would need to establish that the limitations period had not run on their claims by June 13, 2012, the date the initial Complaint was filed by Plaintiffs. As discussed, the 3 year contractual limitations period ran on October 16, 2009, 3 years after the closing date of October 16, 2006.

### 7. Leave to Amend

Finally, Defendants request that should the Court dismiss their Counterclaims, that dismissal be done without prejudice and that they be given leave to amend their pleadings, Mem. Opp'n at 20, is rejected. Defendants' motion is improper and in violation of DUCivR

---

[14]See Doxey-Layton Co. v. Clark, 548 P.2d 902, 906 (Utah 1976), stating the law as follows:

> The rule is that a counterclaim which arises out of the transaction alleged in the complaint and is in existence, at the time the complaint is filed, and is not then barred by a statute of limitations, will not be barred by a running o f the statutory time thereafter. The statute will be suspended until the counterclaim is filed.

7-1(b)(1)(A).[15] Moreover, without a showing that their request for leave to amend their counterclaims would not be futile, the Court must decline any such relief.

## IV. CONCLUSION

After reviewing the materials submitted, the Court agrees with Plaintiffs that because Defendants' Counterclaims were filed more than three (3) years after the parties contractually agreed to that limitations period in the SPA, Defendants' Counterclaims are barred and must be dismissed as untimely.[16]

Accordingly for the reasons stated, as well as generally for those reasons set forth by Plaintiffs in their supporting pleadings, Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaims (Doc. #57) is granted.[17]

DATED this 4th day of June, 2014.

BY THE COURT:

*David Sam*

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[15] "No motion, including but not limited to cross-motions and motions pursuant to Fed. R. Civ. P. 56(d), may be included in a response or reply memorandum. Such motions must be made in a separate document. A cross-motion may incorporate the briefing contained in a memorandum in opposition." DUCivR 7-1(b)(1)(A).

[16] Having decided that the 3 year contractual limitations period applies, the Court does not address Plaintiffs' position that Defendants claims are also time barred due to statutory limitations applicable to each of Defendants' claims.

[17] The Court need not, and does not, reach Plaintiff's alternative position regarding laches.